MATTHEW D. METZGER (SBN 240437)
mmetzger@belvederelegal.com
BELVEDERE LEGAL, APC
605 Market Street, Suite 505
San Francisco, California 94105
Telephone: (415) 513-5980
Facsimile: (415) 513-5985

*Attorneys for Plaintiff*
*Jennifer S. Smith*

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

(OAKLAND DIVISION)

| | |
|---|---|
| In re<br><br>STEVEN RAMON WHITE<br><br>Debtor. | **Case No. 09-46655**<br>**Chapter 7**<br><br>**A.P. No. 09-04478 AJ** |
| JENNIFER S. SMITH, an individual<br><br>Plaintiff.<br><br>vs.<br><br>STEVEN RAMON WHITE, an individual<br><br>Defendant | **PLAINTIFF'S TRIAL BRIEF**<br><br>**Trial Date: April 7, 2010**<br>**Time: 9:30 am**<br>**Ctrm: 215 (Hon. Edward D. Jellen)** |

Plaintiff Jennifer S. Smith, an individual, by and through their attorneys, and pursuant to 11 U.S.C. §§ 523 et seq. and Fed. R. Bankr Pro. 4007 and 7001, submits the following trial brief.

Bk No. 09-46655 / A.P. No. 09-04478 AJ

## Table of Contents

I. Summary of the Case ............................................................................................................. 1
II. Statement of Material Facts not in Dispute ........................................................................... 2
III. Statement of Disputed Facts and Legal Contentions ............................................................ 2
   A. Plaintiff's Contentions: The Debt is Nondischargeable Pursuant to 11 U.S.C. § 523(a)(2)(A) 2
      1. Ms. Smith Discovered the Fraud at the time of the Debtor's July 24, 2009 Bankruptcy Filing ..................................................................................................................................... 2
      2. Smith's Admissible Evidence Satisfies the Elements of Fraud under Section 523(a)(2)(A) 3
   B. Debtor's Contentions .................................................................................................... 6
IV. Relief Requested .................................................................................................................... 7

# I. Summary of the Case

Plaintiff Jennifer Smith ("Smith") is a loan processor for Bank of America. On or about February 16, 2006, Smith entered into an oral agreement with the Defendant, Steven White ("White), to lend sum of $40,000.00, in exchange for four (4) conditions:

1. that Debtor immediately use the $40,000.00 to pay off all of Debtor's outstanding $40,000.00 of credit card debt;

2. that until debtor refinances the loan through a new Home Equity Line of Credit on an anticipated home purchase in December 2006, debtor agrees to make interest only payments at a rate of 8.70% annually with any excess payment applied to principal, and after the December 2006 refinance, debtor agrees to make payments applied both to interest and principal at a rate of 6.875% per annum;

3. that Debtor make monthly payments on the loan to Plaintiff; and

4. Debtor pay back the entire loan with interest to Plaintiff within one-year.

White initially made payments on the loan. In 2006, White made payments totaling $3,550.00. In 2007, White made two (2) additional payments totaling $400.00. On September 1, 2007, White suddenly terminated the relationship with Plaintiff and ceased making any additional payments on the loan starting January 2008.

White never acted in good faith to repay Plaintiff within one-year, not to mention over the balance of the loan. White never completed a purchase of real property from which to secure a home equity line of credit. White ("debtor") also never informed Plaintiff of the proceeds, if any, debtor received from debtor's wage and hour claims against Best Buy, Inc. and Starbucks Corporation. Critically, from February 2006 onwards, debtor maintained falsely that debtor had used the $40,000.00 solely to pay off Debtor's credit card debt.

When debtor filed bankruptcy on July 24, 2009, Smith first discovered that debtor had not used the funds as promised. The debtor's Schedule F that debtor now had $85,597.00 of unsecured non-priority claims, confirming that debtor never used the $40,000.00 to pay off all of debtor's unsecured credit card debt. Indeed, from the discovery propounded, Smith could discern only that debtor spent approximately $22,000.00 to pay down credit card debt. Debtor listed the debt owed to

Bk No. 09-46655 / A.P. No. 09-04478 AJ  - 1 -
PLAINTIFF'S TRIAL BRIEF

Smith on debtor's schedule F as "35,000.00" For the reasons that follow, Smith respectfully requests that the Court order the debt nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

## II. Statement of Material Facts not in Dispute

Ms. Smith submits that the parties agree to the following:

1. On or about February 13, 2006, Smith transferred $40,000.00 into White's bank account.
2. In 2006, White made payments on the loan totaling $3,550.00.
3. In 2007, White made payments on the loan totaling $400.00.
4. White made no additional payments after December, 2007.

## III. Statement of Disputed Facts and Legal Contentions

**A. Plaintiff's Contentions: The Debt is Nondischargeable Pursuant to 11 U.S.C. § 523(a)(2)(A)**

### 1. Ms. Smith Discovered the Fraud at the time of the Debtor's July 24, 2009 Bankruptcy Filing

In California, the discovery rule postpones accrual of a claim until "the plaintiff discovers, or has reason to discover, the cause of action." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008), citing *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 397, 87 Cal.Rptr.2d 453, 981 P.2d 79 (Cal.1999). Plaintiff must show the plaintiff must show: "(1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Id.*, citing *Baker v. Beech Aircraft Corp.*, 39 Cal.App.3d 315, 321 (1974).

Here, Smith became aware of the fraud at the time of the debtor's July 24, 2009 bankruptcy filing. Smith reviewed debtor's schedules and determined that the debtor had over $85,000 of general unsecured debt, well in excess of the $40,000 that the debtor had initially represented to Smith. From the debtor's Statement of Financial Affairs Smith also learned that the debtor had been making a monthly payment of $550 to general unsecured creditor Wells Fargo Bank while the

Bk No. 09-46655 / A.P. No. 09-04478 AJ - 2 -

debtor had ceased making any additional payments on the approximate $35,000 additional balance that Smith was owed.[1]

### 2. Smith's Admissible Evidence Satisfies the Elements of Fraud under Section 523(a)(2)(A)

#### a) Elements of Fraud under § 523(a)(2)(A)

Under § 523(a)(2)(A) of the Bankruptcy Code, a debt for services obtained by the debtor under "false pretenses, a false representation, or actual fraud" is nondischargeable. 11 U.S.C. § 523(a)(2)(A) (2000). "The purposes of th[is] provision are to prevent a debtor from retaining the benefits of property obtained by fraudulent means and to ensure that the relief intended for honest debtors does not go to dishonest debtors." *In re Slyman*, 234 F.3d 1081 (9th Cir. 2000), quoting 4 Collier on Bankruptcy ¶ 523.08[1][a] (15th ed. rev. 2000).

Consistent with these purposes, the Ninth Circuit has consistently held that a creditor must demonstrate five elements of common law fraud to prevail on any claim arising under § 523(a)(2)(A). *See, e.g., Britton v. Price (In re Britton),* 950 F.2d 602, 604 (9th Cir.1991). The five elements, each of which the creditor must demonstrate by a preponderance of the evidence, are:

(1) misrepresentation, fraudulent omission or deceptive conduct by the debtor;

(2) knowledge of the falsity or deceptiveness of his statement or conduct;

(3) an intent to deceive;

(4) justifiable reliance by the creditor on the debtor's statement or conduct; and

(5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

*Slyman*, 234 F.3d 1081, 1085 (citing *American Express Travel Related Servs. Co. v. Hashemi (In re Hashemi)*, 104 F.3d 1122, 1125 (9th Cir.1996); *Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1086 (9th Cir.1996)); *see also Tilbury* 74 B.R. at 77, citing 11 U.S.C. § 523(a)(2)(A).

A claim for fraud under a California law satisfies a claim for fraud within § 523(a)(2)(A).

---

[1] At the earliest, Smith learned of the fraud in December 2007, when communications between Smith and the debtor broke down and the debtor ceased making monthly payments on the loan.

Bk No. 09-46655 / A.P. No. 09-04478 AJ - 3 - PLAINTIFF'S TRIAL BRIEF

*In re Gergely*, 110 F.3d 1448 (9th Cir. 1997).

### b) The Debtor Made a Representation to the Creditor

Here, on or about February 2006, the debtor specifically represented to Ms. Smith the following as a condition to Smith delivering to debtor the $40,000.00:

1) White would use the $40,000.00 to immediately pay off all his outstanding credit card debt.

2) White agree to make interest only payments at a rate of 8.7% annually with excess applied to principal until the December 2006 re-finance, after which White would make payments applied to both interest and principal at a rate of 6.75% per annum.

3) White make monthly payments on the loan; and

4) White pay back the entire loan to me within one (1) year.

The debtor's own conduct serves as an admission of the above terms: ***the debtor made monthly payments on the loan in 2006***. The debtor's email correspondence in October 2007 acknowledged monthly payment terms. Declaration of Jennifer S. Smith ("Smith Decl."), Ex. D ("I tried to send the check on the first day or the first week of a new month.")

The debtor's December 1, 2007 letter to Smith denied payment terms but acknowledged the existence of the loan, and of past loan payments *Id.*, Ex. G. ("I will not be signing any agreement, and I do not agree that I owe you any interest on these funds. I will do my best to pay you $200.00 per month starting December 1, 2007…. Attached is a summary of the specific payments I have made to you")

The acknowledgment of monthly payment terms is an adoptive admission. Fed. Rul. Evid. R. 801(d)(2)(B). The debtor's refusal to refute the existence of a loan, but merely contest the existence of repayment terms, also serves as an adoptive admission as to the existence of the loan. Fed. Rul. Evid. R. 801(d)(2)(B).

Lastly, the debtor represents that the debtor paid $6,190 on the loan, which should leave a balance owing (not counting interest), or $33, 810. Yet, the debtor's schedule F at the time indicated at the time of filing a balance due of $35,000.00. It the debtor represents both that $6,190

Bk No. 09-46655 / A.P. No. 09-04478 AJ - 4 -

was paid on the loan, and that the outstanding balance is $35,000.00, the debtor's own schedule F has acknowledged additional amounts owing of approximately $2,000, beyond the principal of the loan. These statements, taken as a whole, serve as an admission that the debtor owes some interest on the loan.

### c) The Debtor Knew at the Time the Representation Was False

From the conduct that followed the transfer of the $40,000.00, it is clear the debtor never had any intention of paying back the loan at the time the debtor agreed to the loan terms at any time, needless to say pay it back within one year. For the following reasons, representations to which the debtor agreed as a condition of receiving the loan were false, the debtor knew them to be false, and the debtor made them with the intent to defraud Smith.

First, the debtor never updated Smith on the final status of the real property purchase, or of the final status of the two (2) wage and hour claims against the debtor's former employers. *See, id.*, ¶¶ 10, 11.

Second, the debtor's subsequent correspondence denied that a loan was ever made, and instead insisted that the debtor was simply making good will payments back to the creditor as a unilateral gesture of good faith. *See, id.*, Ex. G ("On my own I decided to pay you on a monthly basis at $340.00 per month and you had no objection to this so long as we were dating. Attached is a summary of the specific payments I have made to you.").

A debtor who agrees to accept a loan – as evidenced by the debtor's conduct in making monthly loan payments – cannot ever have had the intention to pay back the loan in full if the debtor's subsequent correspondence denies the status of the $40,000.00 as a "loan."

The debtor's conduct also makes it clear never had any intention of using the $40,000.00 loan to immediately pay off all of debtor's credit card— a condition that the debtor had promised to Smith for Smith to make the loan. In the month of February 2006 – the month the loan was made –, only about half the loan amount – or $20, 845.92 –went to pay off credit card debt. The following month, only $2,776.24 of went to pay off credit card debt – far short of the $40,000.00 that Smith had loaned the debtor. *See, id.*, ¶¶ 33-37.

Bk No. 09-46655 / A.P. No. 09-04478 AJ  - 5 -  PLAINTIFF'S TRIAL BRIEF

### d) The Debtor Made the Representation with the Intent and Purpose of Deceiving the Creditor

The fact that the debtor made initial monthly payments on the loan – from March 17, 2006 through November 3, 2006 – is evidence of a specific intent to deceive the creditor into believing that the debtor would enter into a monthly repayment plan on the loan. The agreed to a monthly repayment plan at the time the loan was made – on February 13, 2006. The debtor then appeared to perform on the obligation by making a monthly payment up through November 3, 2006.

The debtor used the promise of making initial monthly payments on the loan to induce Smith into making the $40,000.00 transfer. "An intent to defraud is an intent to deceive another person for the purpose of gaining some material advantage over that person or to induce that person to part with money or to alter the person's position to its injury and to accomplish that purpose by some false statement, false representation of fact, wrongful concealment or suppression of truth, or by any other artifice or act designed to deceive." *People v. Blick*, 153 Cal.App.4th 759, 767 (Cal. App. 1 Dist. 2007). (quoting CALJIC No. 15.26). The debtor's promise – and performance – of on initial monthly loan payment on a loan for which the debtor had no intent of paying back to maturity falls squarely within a clear intent to deceive Smith.

### e) The Creditor Justifiably Relied on the Representation

Here, Ms. Smith sustained financial damages as the proximate result of the debtor's misrepresentations. It is undisputed that on or about February 13, 2006, Smith transferred $40,000.00 into White's bank account from Smith's home equity line of credit. There is currently at least $35,000.00 due and owing. From the time of the initial transfer, Smith also has incurred interest on the outstanding balance.

### B. Debtor's Contentions

The debtor's contentions as to the status of the loan are wholly unintelligible to Smith.

The debtor appears to take the position that Smith simply gave the money to the debtor, and the debtor merely decided in good faith to repay the debtor a monthly amount of the debtor's own choosing, and to cease making payments after December 2007.

Bk No. 09-46655 / A.P. No. 09-04478 AJ - 6 -

The debtor also takes the position that the debtor paid a total of $6,190 on the loan.

## IV. Relief Requested

Ms. Smith respectfully requests a determination by the Court that :

1) the amounts owing - $35,000.00, calculated at 8.7% annual interest, starting February 13, 2006 are nondischargeable

2) for attorney's fees and costs of suit, subject to post-trial motion.

3) Such other and further relief as the Court deems just and proper.

Date: March 31, 2010                    BELVEDERE LEGAL APC

By: ___/S/_____

MATTHEW D. METZGER (#240437)
Belvedere Legal, a Professional Corporation
605 Market Street, Suite 505
San Francisco, CA 94105
Tel: (415) 513-5980
Fax: (415) 513-5985

*Attorneys for Plaintiff*

Bk No. 09-46655 / A.P. No. 09-04478 AJ                - 7 -
PLAINTIFF'S TRIAL BRIEF