Entered on Docket
April 15, 2010
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed: April 14, 2010

_____
EDWARD D. JELLEN
U.S. Bankruptcy Judge
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                    Case No. 09-46655 EDJ
                                         Adv. No. 09-04478 AJ
STEVEN RAMON WHITE,

                  Debtor.      /
JENNIFER S. SMITH,

                  Plaintiff,
vs.

STEVEN RAMON WHITE,

                  Defendant.  /

## DECISION

By this adversary proceeding, plaintiff Jennifer S. Smith ("Smith") seeks a nondischargeable fraud judgment against defendant Steven Ramon White ("White"), the above debtor, pursuant to Bankruptcy Code § 523(a)(2).[1]  The court will enter judgment in

---

[1] Smith's complaint alleges a claim under Bankruptcy Code § 523(a)(6)(willful and malicious injury).  At trial, however, plaintiff did not present any evidence as to that claim.

Decision

favor of White.

A. <u>Introduction</u>

Smith and White were in a personal romantic relationship for several years. During that relationship, Smith became aware of the fact that White owed a significant amount of credit card debt. Beyond this, the parties agree on very little.

Smith testified that White told her he owed approximately $40,000 in such debt. White testified that he never told Smith the amount of credit card debt he owed.

Smith testified that she gave White a cashier's check for $40,000 in February 2006. White acknowledges receiving the money at that time, but testified that there was no cashiers' check, and that Smith deposited the funds directly to his bank account.

Smith testified that the funds were a loan, which White agreed to repay within one year at an interest rate equal to the rate Smith was paying on a home equity loan she owed. White testified that the moneys were a gift, that Smith told him she would "give" him some money to help him out, and that he didn't know the amount Smith intended to give him until after she had made the deposit to his account.

Smith testified that White promised to use the $40,000 to repay his credit card debt. White testified that he made no such promise.

Smith testified that White told her he would repay her out of the proceeds of a refinance of real property that White intended to acquire in the future, and from the proceeds of a wage and hour claim White hoped to recover on. White testified that he made no

such representations, that he was newly divorced, and had neither the intent nor the ability to purchase any real property. White further testified that he had made Smith aware of his divorce and the reduced financial condition that resulted.

The parties more or less agree that White repaid Smith approximately $6,000, over time, by a number of separate checks, which Smith introduced into evidence. Smith testified that White terminated the relationship in September 2007, whereupon White stopped making payments. White testified that he made some payments after he terminated the relationship, a contention that is supported by Smith's Exhibit C, which shows that White made two $200 payments after September 2007.

Smith argues that the payments White made demonstrate that the $40,000 was a loan. White disputes this, and testified that he made the payments to demonstrate to Smith that he was not trying to take financial advantage of her.

In any event, White filed a voluntary chapter 7 bankruptcy petition herein on July 24, 2009, approximately two and one-half years after White made the last payment. Smith testified that after she received notice of the bankruptcy, she reviewed White's schedules and saw that White owed a substantial amount of credit card debt at the date of the petition. She therefore concluded that White must not have used the proceeds at issue to repay credit card debt. She also learned that White had repaid some other debts she hadn't known about, instead of repaying her. Smith concluded that she was a fraud victim, and the present adversary proceeding

Decision 3

followed.

B. <u>Discussion</u>

Bankruptcy Code § 523(a)(2)(A) provides:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt - . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by - (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

To prevail under § 523(a)(2)(A), a creditor must establish that: (1) the debtor made a representation, (2) with knowledge of its falsity, (3) with the intention and purpose of deceiving the creditor, (4) that the creditor justifiably relied on the representation, <u>Field v. Mans</u>, 516 U.S. 59, 116 S.Ct. 437 (1995)(justifiable reliance required), and (5) that the creditor sustained damage as the proximate result thereof. See <u>In re Britton</u>, 950 F.2d 602, 604 (9th Cir. 1991). The creditor must establish each of these elements by a preponderance of the evidence. <u>Grogan v. Garner</u>, 498 U.S. 279, 111 S.Ct. 654 (1991).

Here, the court need not resolve the issue of whether the $40,000 was a gift or a loan because resolution of this issue would not affect the court's decision.[2] This is so because there was an almost total failure on the part of Smith to prove any fraud by

---

[2] Even so, the court notes that there was no promissory note, and no other writing setting forth any terms of the alleged loan. And Smith admitted that she did not keep any loan ledger regarding payments. Smith attempted to obtain a written agreement from White after he ceased making payments, but White refused to sign such an agreement.

Decision 4

White, or to prove any of the required elements of fraud.

Even if the court were to assume that the money was a loan, Smith presented little or no evidence that White induced her to provide him with the money under false pretenses or through any misrepresentation. To prevail, the representation required as a basis for fraud must relate to a then-existing state of facts or circumstances, rather than an event that may or may not occur in the future. See <u>In re Allison</u>, 960 F.2d 481,484 (5th Cir. 1992) ("a promise to perform acts in the future is not considered a qualifying misrepresentation merely because the promise is subsequently breached."); <u>see also</u> <u>In re Highfill</u>, 336 B.R. 701 (Bankr. M.D.N.C. 2006 ("a promise to perform some act in the future, without more, does not constitute a representation for purposes of § 523(a)(2)(A)"). Therefore, any representations White may have made as to purchasing real property and refinancing it to repay Smith, or as to a recovery on an outstanding wage and hour claim, are not of the type required for a plaintiff to prevail under Bankruptcy Code § 523(a)(2).

Moreover, the court finds credible White's testimony as to his financial inability to purchase and then refinance real property, and his testimony that Smith was aware of such inability throughout their discussions during the course of the relationship.

Smith testified that White misrepresented that he intended to use the proceeds at issue to repay credit card debt, but admitted that White may have "possibly" used as much as $30,000 of the proceeds for that very purpose. White testified that he used

Decision 5

approximately $30,000 of the proceeds to repay credit card debt.
Under the circumstances, the difference between $30,000 and $40,000
is not significant, even if White had promised to use the money to
repay credit card debt.

In addition, White presented no evidence to show whether or to
what extent the credit card debt White owed at the date of the
petition was the same debt that he owed at the time he received the
$40,000.

Smith contends that White borrowed the funds without intending
to repay her. As mentioned, White denies that any loan was
involved. Even assuming a loan, however, the weight of the evidence
showed an intent to repay by White, coupled with his financial
inability to repay the entire $40,000. Financial inability alone,
however, does not, in and of itself, establish fraud. See In re
Anastas, 94 F.3d 1280, 1285 (9th Cir. 1996).

That is especially true here because, as to the fraud element
of justifiable reliance, there was a total failure of proof by
Smith. Smith is employed by Bank of America as a mortgage loan
processor. As such, she is familiar with sound lending practices as
to the granting and documentation of loans. Here, the only item of
material financial information she had about White's assets and
liabilities at the time she provided the funds to him was the fact
that he owed credit card companies a lot of money. Thus, the evidence did
not show that Smith provided White with the funds in any reliance, let
alone justifiable reliance, on any representations by White.

Smith testified that she did not follow basic prudent lending

Decision 6

practices because she trusted White.  This may be so.  But this just underscores the point that, even if Smith extended credit to White, she did so, not in reliance on anything White had represented, but based on their then-existing romantic relationship.

As to the proximate causation requirement, it follows from the foregoing that there was, again, an almost a complete failure of proof that any representation by White, rather than the parties' close romantic relationship, was the proximate cause of Smith's providing White with the $40,000.

C. Conclusion

The court will issue its judgment in favor of White, providing that any debt he may have owed to Smith at the date of his bankruptcy petition will be included in his general discharge.

** END OF DECISION **

Decision                                                        7

COURT SERVICE LIST

Matthew D. Metzger
Belvedere Legal, APC
605 Market St. #505
San Francisco, CA 94110

Steven Ramon White
P.O. Box 9354
Pittsburg, CA 94565

Decision 8